# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CHARLES AWUSIN INKO-TARIAH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   **Case No. 22-cv-01365 (APM)** |
| | ) |
| BUDWEISER BREW HOUSE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

## I.   INTRODUCTION

Pro se Plaintiff Charles Awusin Inko-Tariah asserts claims of disability discrimination against the Budweiser Brew House, the Washington Nationals, and Events DC after attending a baseball game in June 2021. Washington Nationals Baseball Club, LLC ("the Nationals") and Events DC have moved to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. For the reasons explained below, the motion will be granted.[1]

## II.   BACKGROUND[2]

Plaintiff is deaf and partially blind. On June 18, 2021, after living in the Washington, D.C. area for nearly 20 years, Plaintiff attended his first major league baseball game at Nationals Park, where he spent "approximately $18.00" for the entry ticket and a soda. Mot. for Leave to File Am. Compl., ECF No. 6, Am. Compl., ECF No. 6-1, ¶¶ 6–7. Instead of going to his assigned seat, Plaintiff proceeded to the Budweiser Brew House located within the Park, which had seven

---

[1] In view of this disposition, Plaintiff's pending motion for appointment of counsel, ECF No. 3, will be denied as moot.

[2] For current purposes, Plaintiff's factual allegations are accepted as true.

television screens.  *Id.* ¶¶ 7–8.  Plaintiff introduced himself to the bartender "via iPhone text and explained that he is [a] deaf/partially blind baseball fan in need of TV captioning."  *Id.* ¶ 7.  The following ensued.

> Initially [Plaintiff's server] Mr. Swisher . . . claimed that there is no remote control and 30 minutes later he emerged with the remote control only to show the plaintiff that it was devoid of battery. Another thirty minutes passed before he could get the battery and asked Plaintiff which of the three TVs in front of him he wanted the captioning activated on and Plaintiff pointed to the middle. Mr. Swisher went on trying to activate it for about 5 minutes in vain so he gave up and told the plaintiff that there is nothing he can do to help him. . . .  He said that he will find someone to fix it but forgot about [Plaintiff] for an additional 20 minutes attending to other patrons until the plaintiff began recording evidence on his Apple iPhone XR showing all the 7 TVs lacked captioning.

*Id.* ¶ 8.  When Plaintiff asked for the name of the bar owner and "hinted" at contacting a lawyer specializing in disability discrimination, Swisher took Plaintiff to the corporate office where Plaintiff was given information about lodging a complaint with "the Washington Nationals authorities," which he did.  *Id.* ¶ 9.  On June 23, 2021, Director of Guest Experience Elliott Fodera "apologized to the plaintiff for the humiliation, pain and suffering of being denied the opportunity to experience the surrounding fanfare and pageantry" and invited him "to attend another game."  *Id.* ¶ 10.  Plaintiff "declined" the invitation "for several months and hinted at consulting a lawyer for advice."  *Id.*

After contacting several legal organizations and the Department of Justice's Disability Rights Section and receiving "the same old tired excuses" for declining representation, *id.* ¶¶ 10–11, Plaintiff determined that "he is the best pilot of his destiny," *id.* ¶ 12.  He filed this action on May 17, 2022, and the operative amended complaint on June 23, 2022.  Invoking Section 504 of the Rehabilitation Act and Title III of the Americans with Disabilities Act, Plaintiff seeks "$9,999,000 in both compensatory and punitive damages collectively against defendants for

humiliation, anguish and intentional infliction of emotional distress" and seemingly a "nationwide" injunction compelling "sensitivity training" at stadiums, bars, and restaurants and "mandating TV captioning activated upon request for Deaf, Deaf/Partly-Blind and Hearing-Impaired fans or customers." *Id.* ¶ 24.

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1)

Defendants' motion to dismiss for lack of subject-matter jurisdiction arises under Federal Rule of Civil Procedure 12(b)(1). Defs.' Mot. to Dismiss, ECF No. 18 [hereinafter Defs.' Mot.], at 1. On a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction over his claims. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). A court must accept all well-pleaded factual allegations in the complaint as true. *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005). A court is not limited to the allegations made in the complaint, however, and "may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)); *see also Jerome Stevens Pharms.*, 402 F.3d at 1253. Under Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3); *D.C. Transit Sys., Inc. v. United States*, 717 F.2d 1438, 1440 n.1 (D.C. Cir. 1983).

### B.   Rule 12(b)(6)

Defendants' motion to dismiss for failure to state a claim upon which relief can be granted arises under Rule 12(b)(6). Defs.' Mot. at 1. To survive such a motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, a court must grant a defendant's Rule 12(b)(6) motion. *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept a plaintiff's "factual allegations . . . as true," *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 67 (D.C. Cir. 2015), and "construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). However, the court need not "accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). When performing the "context-specific task" of deciding whether a plausible claim has been stated, a court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV.   DISCUSSION

Defendants advance two threshold arguments for dismissal.  They argue first that Plaintiff has stated no claim for money damages, Defs.' Mot., Defs.' Mem. in Supp. of Defs.' Mot., ECF No. 18-2 [hereinafter Defs.' Mem.], at 5–6, and second that Plaintiff lacks standing to pursue injunctive relief, *id*. at 6–7.  Because "a showing of standing is an essential and unchanging predicate to any exercise of a court's jurisdiction," *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (cleaned up), the court will address this ground first.  *See Dominguez v. UAL Corp*., 666 F.3d 1359, 1362 (D.C. Cir. 2012) ("[E]very federal court has a 'special obligation to satisfy itself' of its own jurisdiction before addressing the merits of any dispute.").

### A.   Standing

The party invoking standing "bears the burden of showing that he has standing for each type of relief sought."  *Summers v. Earth Island Inst*., 555 U.S. 488, 493 (2009).  To satisfy the "irreducible constitutional minimum of standing," a litigant must demonstrate that (1) he has suffered an injury in fact—the invasion of a legally protected interest; (2) the injury is fairly traceable to the defendants' challenged conduct (a causal connection); and (3) a favorable decision on the merits likely will redress the injury.  *Lujan*, 504 U.S. at 560–61.  The injury must be concrete and particularized and actual or imminent, not conjectural, hypothetical, or speculative.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016).  "This set of criteria implements Article III by limiting judicial intervention to only those disputes between adverse parties that are 'in a form . . . capable of judicial resolution.'"  *Fla. Audubon Soc'y*, 94 F.3d at 663 (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 218 (1974)).

When, as here, a plaintiff seeks injunctive relief, "[t]he standing requirement . . . cannot be met absent a showing of a real or immediate threat that the plaintiff will be wronged again."

*Jefferson v. Stinson Morrison Heckler LLP*, 249 F. Supp. 3d 76, 81 (D.D.C. 2017) (internal quotation marks omitted).  "[H]arm in the past . . . is not enough to establish a present controversy, or in terms of standing, an injury in fact."  *Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 336 (D.C. Cir. 2003).  Stated another way, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury."  *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1022 (D.C. Cir. 1998).

Defendants contend that Plaintiff lacks standing to seek injunctive relief because he alleges no plans to return to Nationals Park, and "the reasonable inference from his allegations is that he does not" plan to return there.  Defs.' Mem. at 7.  This argument misapprehends Plaintiff's initial demand for a sweeping nationwide injunction that he, as a pro se party, cannot pursue.  *See* 28 U.S.C. § 1654 (in federal court, "parties may plead and conduct their own cases personally or by [licensed] counsel.");  *cf. DeBrew v. Atwood*, 792 F.3d 118, 132 (D.C. Cir. 2015) ("[A] *pro se* litigant who is not trained as a lawyer is simply not an adequate class representative.").  Nevertheless, and in view of Plaintiff's revised narrower demand for relief directed at Defendants, *see* Pl.'s Resp. to Defs.' Mot., ECF No. 20 [hereinafter Pl.'s Resp.], at 6, the court agrees that Plaintiff's apparent indifference to returning to Nationals Park for a baseball game fails to establish "a real and immediate" threat of future harm.  Plaintiff declined Defendants' invitation to attend another game even when assured that his "ticket(s) would be located in an area of the stadium with TVs displaying close[d] captioning," Am. Compl., Exs., ECF No. 6-2, at 16, and he "has suspended going back to the . . . stadium until after the matter has been resolved," Pl.'s Resp. at 3.  Recall, moreover, that Plaintiff lived in the D.C. vicinity for nearly 20 years before attending his

6

first game.  Therefore, the claim for injunctive relief is dismissed under Rule 12(b)(1) for want of standing.

### B.      Failure to State Claims for Monetary Relief

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).  It is established that "[p]rivate parties bringing suit under Title III of the ADA are limited exclusively to injunctive relief." *Jefferson*, 249 F. Supp. 3d at 80; *see also Am. Bus Ass'n v. Slater*, 231 F.3d 1, 5 (D.C. Cir. 2000) ("The remedies set forth in 42 U.S.C.2000a–3(a) . . . do not include money damages."); *Reeves v. MV Transp., Inc.*, 845 F. Supp. 2d 104, 107 (D.D.C. 2012) ("[O]nly injunctive relief is available for violations of Title III." (internal quotation marks omitted)).

Section 504 of the Rehabilitation Act provides in relevant part that "[n]o otherwise qualified individual with a disability in the United States . . . shall, *solely by reason of* her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (emphasis added).  "Congress limited the scope of § 504 to those who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds." *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986).  Nothing alleged in the complaint suggests that Defendants are actual recipients of federal financial assistance, and the allegations acknowledging technical problems with the closed-captioning system*, see supra* at 2, belie Plaintiff's disability as

the sole reason for the exclusion.  Failure to establish those essential elements provides sufficient reason to dismiss this claim.

In addition, the Supreme Court has held that neither punitive damages nor damages for emotional distress are recoverable in private suits under the Rehabilitation Act.  *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576 (2022) (examining *Barnes v. Gorman*, 536 U.S. 181 (2002)).  Therefore, Plaintiff's claim seeking more than $9 million for "humiliation, anguish and intentional infliction of emotional distress" is dismissed under Rule 12(b)(6), as is any separate claim for compensatory damages.

### C.     Claims Against Budweiser Brew House

The attempt to serve process upon defendant Budweiser Brew House at the address in the complaint was unsuccessful.  *See* ECF No. 12 (U.S. Marshal's return).  Nevertheless, in *in forma pauperis* proceedings such as this, "the court shall dismiss the case at any time" if, as here, the court determines that the complaint fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).  Accordingly, the complaint against Budweiser Brew House is dismissed for the reasons stated above.

A separate order of dismissal accompanies this memorandum opinion.

Dated:  November 10, 2022

Amit P. Mehta
United States District Judge